## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

SAMANTHA NICOLE SPAUR,

                               Plaintiff,

vs.

REALPAGE, INC.,

                              Defendant.

CASE NO.: 3:19-cv-1223

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff Samantha Nicole Spaur ("Plaintiff" or "Ms. Spaur"), by and through her attorneys, brings the following Complaint and states as follows:

### <u>INTRODUCTION</u>

1.     This is an individual action for damages, costs and attorneys' fees brought against RealPage, Inc. ("Defendant" or "RealPage") pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA").

2.     Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to landlords who use the reports to make decisions regarding whether to rent to certain consumers.

3.     Defendant falsely reported to Ms. Spaur's potential landlord that Ms. Spaur is a convicted felon. In fact, Ms. Spaur is not a convicted felon and has never been charged with a crime.

4.     Defendant's inaccurate reporting cost Ms. Spaur her ability to rent the property of

her choice that was suitably accommodating of her needs, causing her physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

5.      Defendant's inaccurate report could have been easily remedied had Defendant performed a cursory review of Ms. Spaur's report and consulted current public record prior to issuing Ms. Spaur's report to her prospective landlord.

6.      Defendant does not employ reasonable procedures to ensure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Ms. Spaur's report being inaccurate.

7.      As a result of Defendant's conduct, Ms. Spaur brings claims for failure to use reasonable procedures to ensure maximum possible accuracy based on § 1681e(b) of the FCRA.

## THE PARTIES

8.      Plaintiff Samantha Nicole Spaur is a natural person who resides in Como, Mississippi, and is a "consumer" protected by the FCRA.

9.      Defendant RealPage, Inc. ("RealPage") is a Delaware corporation doing business throughout the United States, including in the State of Mississippi, and has a principal place of business located at 2201 Lakeside Boulevard, Richardson, TX 75082.

10.     Among other things, Defendant sells consumer reports, often called background checks and credit reports, to landlords for their use in deciding whether to rent to a prospective tenant. These reports are sold to landlords in connection with a business transaction initiated by the consumer.

11.     Defendant is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in whole or in part in the practice of assembling

2

and/or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over Ms. Spaur's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Ms. Spaur's claims occurred in this District.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

14. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting. It regulates all consumer reports, including the tenant screening report prepared by Defendant on Ms. Spaur.

15. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks like RealPage are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

16. The FCRA provides a number of protections for housing applicants who are subject to background checks.

17. The FCRA imposes duties on consumer reporting agencies to ensure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities

3

with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

18.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

## FACTS

### Defendant's Inaccurate Tenant Screening Report

19.     In March 2019, Ms. Spaur sought to rent an apartment in Southhaven, Mississippi.

20.     In looking for an apartment, Ms. Spaur found only one that met her needs, a one bedroom, one bathroom unit located on the first floor within the Church Lake Apartment Homes ("Church Lake") complex at 5186 Church Lake Drive, Southhaven, Mississippi 38671 ("the Church Lake Unit").

21.     In addition to being located on the first floor of the Church Lake complex, Ms. Spaur had a preference for renting the Church Lake Unit because it was in a much safer area than her alternative living options and it was an affordable and attractive option given the size and price of the unit.

22.     Church Lake is one of many properties managed by The Legacy Property Management Group, LLC ("Legacy Management"), located in Nashville, Tennessee.

23.     In or about mid-March 2019, Ms. Spaur accessed Church Lake's website and began looking at apartment units available for rent. After finding an available unit that piqued her interest, Ms. Spaur telephoned Church Lake, spoke to Michael, one of Church Lake's leasing agents, and scheduled an in-person meeting to tour the apartment unit she was interested in.

24.     On March 29, 2019, Ms. Spaur visited the Church Lake complex and Michael gave her a tour of the first floor apartment unit she was interested in. After completing the tour, Ms.

Spaur was very impressed with the Church Lake Unit as it met all her needs, and decided that she wanted to move forward with renting the unit. Michael instructed Ms. Spaur to complete a written rental application and submit payment in the amount of $50.00, which would cover fees for the application and background check. Ms. Spaur completed the rental application that same day and submitted it to Michael before she left, along with her payment for the $50.00 application and background check fee.

25.     Church Lake contracted with RealPage to provide tenant screening reports, which are consumer reports also known as background checks, on prospective tenants used to determine whether a prospective tenant is eligible to rent an apartment unit.

26.     On or about March 31, 2019, Church Lake obtained a consumer report regarding Ms. Spaur from RealPage, which it calls a "Screening Report" ("the Report"), which included a compilation of Ms. Spaur's credit report, a criminal record report, and eviction report.

27.     The Report is a consumer report regulated by the FCRA.

28.     The "Criminal & Other Records" section of the Report included the following:

**Criminal & Other Records**

Run date  3/31/2019
Offender information

| ID | Jur code | Name | Birth date | SSN | Photo/Description |
|----|----------|------|-----------|-----|-------------------|
| 1 | KYDOC | BRYANT, SAMANTHA | 1/1/xxxx - 12/31/xxxx | | SEX: f HEIGHT: 5 ft 8 in WEIGHT: 180 RACE_ETHNIC: white HAIR: brown EYE_COLOR: brown |
| 2 | KYDOC | BRYANT, SAMANTHA | 1/1/xxxx - 12/31/xxxx | | SEX: f HEIGHT: 5 ft 8 in WEIGHT: 180 RACE_ETHNIC: white HAIR: brown EYE_COLOR: brown |

Alias information - ID column indicates association between offender and alias

| ID | Jur code | Name | Birth date | Alias | |
|----|----------|------|-----------|-------|--|
| | | | | Name/Description | Birth date |
| 1 | KYDOC | BRYANT, SAMANTHA | 1/1/xxxx - 12/31/xxxx | BRYANT, SAMANTHA ANN | |
| 2 | KYDOC | BRYANT, SAMANTHA | 1/1/xxxx - 12/31/xxxx | BRYANT, SAMANTHA ANN | |

Offense information - ID column indicates association between offender and offense

| ID | Jur code | Disposition | Type/Level | Charge | Record Date | ORIC/ County | Note |
|----|----------|-------------|-----------|--------|-------------|--------------|------|
| 1 | KYDOC | 4 YEARS | F | RECEIVING STOLEN PROPERTY>$500 AND<$10,000 | 03/05/2014 | HOME INCARCERATION PROGRAM (HIP) | |
| 1 | KYDOC | 4 YEARS | F | THEFT OF CONTROLLED SUBSTANCE, 1ST OFFENSE OR LT $300 | 03/05/2014 | HOME INCARCERATION PROGRAM (HIP) | |
| 2 | KYDOC | 1 YEARS | F | CRIMINAL POSSESSION FORGED INSTRUMENT-2ND DEGREE-IDENTIFY | 03/05/2013 | HOME INCARCERATION PROGRAM (HIP) | |

Source and Vendor Information

| Jur Code | Source | Vendor Information |
|----------|--------|-------------------|
| KYDOC | Kentucky Corrections | Genuine Data Services, LLC |

29.     RealPage's reporting was false. The three above-referenced felony convictions should not have been included in Ms. Spaur's Report.

30.     Any member of the public who took a five minute cursory review of Ms. Spaur's public record on the internet, or the underlying court records from Boone County, Kentucky, could confirm the flaw in the RealPage's Report. The criminal records included in Ms. Spaur's Report belong to an unrelated female living in Boone County, Kentucky, named Samantha Ann Bryant ("Convicted Felon Samantha Bryant"). It is indisputable that prior to supplying the Report about Ms. Spaur to Church Lake, RealPage failed to consult current public records in Boone County, Kentucky. Had RealPage actually consulted or obtained the underlying court records, it would have seen obvious discrepancies between Convicted Felon Samantha Bryant and Ms. Spaur.

31.     The discrepancies that should have caused RealPage to realize Ms. Spaur is not the same person as Convicted Felon Samantha Bryant include the following: (i) Ms. Spaur's legal name as characterized on the first page of the RealPage Report is "Samantha N Spaur" and the three felony convictions belong to a "Samantha Ann Bryant;" (ii) the Report does not indicate that Convicted Felon Samantha Bryant shares Ms. Spaur's same birthdate; (iii) Ms. Spaur has never been charged with or convicted of a crime in Boone County, Kentucky, or in any other county in the United States; and (iv) Plaintiff used her middle name of Nicole or a middle initial "N" in any public records she completed, and the middle name "Ann" appears on the Report in the criminal records for Convicted Felon Samantha Bryant by which RealPage made the match with Ms. Spaur.

32.     The sole reason the three inaccurate felony convictions were reported as belonging to Ms. Spaur was that RealPage failed to use reasonable procedures to assure the maximum possible accuracy of the information contained within Ms. Spaur's Report. Had RealPage used reasonable procedures, it would have discovered that the inaccurate stigmatizing felony

convictions contained within Ms. Spaur's Report belonged to an unrelated female living in Boone County, Kentucky, with an entirely different last name and middle name.

33.     On March 31, 2019, Ms. Spaur received an email from Church Lake regarding her application status. The email informed her that her rental application had been denied due to "[c]redit history unsatisfactory, [c]riminal and other public records unsatisfactory, and [c]redit score unsatisfactory or insufficient." The email also included a "LeasingDesk Score" for Ms. Spaur, which is essentially a risk score provided by RealPage that landlords use when determining whether to accept or deny rental applications and when determining the amount of a tenant's security deposit and/or down payment. LeasingDesk Scores range from a low of 0 to a high of 1000; Ms. Spaur's LeasingDesk Score was a 27, which was largely a result of the three inaccurate felony convictions included in her RealPage Report.

34.     Ms. Spaur immediately telephoned Church Lake and spoke with Michael. She asked Michael why her rental application had been denied. Michael informed her that her rental application was denied "due to your extensive criminal record." Ms. Spaur, surprised and confused, immediately informed Michael that she had a clean criminal record, having never been charged with a crime. Michael informed her that the RealPage Report he was looking at on his computer screen indicated that she had been convicted of three felonies in Kentucky. Ms. Spaur immediately requested a copy of the RealPage Report. Michael stated that he is "not allowed to give criminals copies of their background checks, per company policy," but gave her the option to come in to Church Lake and take a picture of the RealPage Report as it appeared on his computer screen.

35.     Ms. Spaur was humiliated that her potential landlord now thought she was a convicted felon, especially considering that she had truthfully stated in her rental application that

she had never been convicted of a crime.

36.     Later that same day, Ms. Spaur went back into Church Lake, met with Michael, and took a picture of her RealPage Report as it appeared on Michael's computer screen. She asked Michael how she could correct her Report and he stated that she would "need to contact the department of corrections."

37.     On April 1, 2019, Ms. Spaur took the day off of work to try and figure out how and why Convicted Felon Samantha Bryant's criminal record was included in her RealPage Report. First, Ms. Spaur completed and submitted the Consumer Dispute form on RealPage's website, along with a copy of her driver's license. In her dispute, she informed RealPage that the criminal records included in her Report do not belong to her, that she has never had a criminal record, and that her rental application had been denied as a result of RealPage's inaccurate report. Second, she telephoned RealPage, spoke with a representative, and requested a copy of her report. Third, she telephoned the Boone County, Kentucky Sheriff's Office, explained her situation, and inquired about the three felony convictions included in her RealPage Report. A representative of the Boone County Sheriff's Office told Ms. Spaur that if she provided her personal identifying information and her Social Security number, she could do a criminal record search in her name to confirm whether she had a criminal record in Kentucky. The criminal record search came back establishing that Ms. Spaur had never been charged or convicted of a crime in Kentucky. Ms. Spaur requested that the representative fax a copy of the criminal record search to Michael at Church Lake. The representative immediately complied with her request.

38.     Later that same day, Ms. Spaur received a telephone call from Michael at Church Lake. He informed her that he had received the fax from the Boone County Sheriff's Office with a copy of a criminal record report from the Justice Court Records Department indicating that she

did not have a criminal record in Kentucky. Michael then stated that this would be enough proof to submit her rental application to the Legacy Management corporate office with a request to override the information contained within RealPage's Report. Michael also stated that he would need to discuss with the Legacy Mangement corporate office how this new information would impact her LeasingDesk Score and, therefore, the amount she would be required to pay for the security deposit.

39.     Shortly thereafter, fearing that she would not have a place to live, Ms. Spaur began searching for alternative living arrangements. She submitted a rental application at another apartment complex located in Southhaven, Mississippi, and had to pay $250.00 for the application/administration and background check fees.

40.     In the days that followed, Ms. Spaur received a telephone call from Michael at Church Lake informing her that Legacy Management corporate had cleared her rental application and she would now be allowed to move in on April 12, 2019, if she was still interested in renting the Church Lake Unit.

41.     On April 10, 2019, Ms. Spaur received email correspondence from RealPage, which read:

> LeasingDesk Screening has investigated your dispute and has notified the sources of the disputed information. Our investigation is now complete. The investigation performed by LeasingDesk Screening **revealed that the disputed information is inaccurate, incomplete, or cannot be verified.**
>
>  Here is a summary of the results of our investigation:
>
> **The disputed criminal information included in the report provided to Legacy at Church Lake apartment community on 03/31/2019 was derived from public records from Kentucky Corrections. Based on our investigation and the documentation provided, we have determined that the records reporting do not belong to you and will be removed from your file.**

(emphasis in original).

42.     But for RealPage's false Report, Ms. Spaur's rental application would have been accepted by Legacy Management and she would have been allowed to move into the Church Lake Unit the first week of April 2019.

43.     RealPage does not use reasonable procedures to assure maximal accuracy because it wouldn't make as much money if it implemented such procedures. Instead of ensuring that records it reports match the subjects of the reports it issues, RealPage instead merely collects information from third party vendors, which it repackages and sells as its rental screening products.

44.     Despite knowing that its procedures are unreasonable and do not assure the maximal accuracy required by the FCRA, RealPage persists in utilizing procedures in reckless or knowing disregard for the rights of consumers, causing the very type of damages suffered by Ms. Spaur.

45.     The injuries suffered by Ms. Spaur as a direct result of RealPage's erroneous reporting are the type of injuries that the FCRA was enacted to address. At common law, RealPage's conduct would have given rise to causes of action based on defamation and invasion of privacy.

46.     As a direct result of RealPage's conduct, Ms. Spaur has suffered these injuries resulting in damages, including the inability to rent the unit she desired when she desired to rent it; the expenditure of time and money looking for another rental unit; the expenditure of time and money trying to correct her report; financial loss; damage to her reputation; physical injury as a result of emotional distress; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, frustration, humiliation, and embarrassment; and other losses that are continuing in nature.

<u>**CLAIM FOR RELIEF**</u>
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

47.   Ms. Spaur relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

48.   Defendant violated 15 U.S.C. § 1681e(b) by preparing a consumer report relating to Ms. Spaur without following reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Spaur.

49.   Defendant willfully violated 15 U.S.C. § 1681e(b) in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

50.   In the alternative, Defendant negligently violated 15 U.S.C. § 1681e(b), which entitles Ms. Spaur to a recovery under 15 U.S.C. § 1681o.

51.   Pursuant to 15 U.S.C. § 1681o and § 1681n, Ms. Spaur is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

<u>**PRAYER FOR RELIEF**</u>

52.   WHEREFORE, Ms. Spaur prays for relief as follows:

a)   Determining that Defendant negligently and/or willfully violated the FCRA;

b)   Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

c)   Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

d)   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

53.     Ms. Spaur demands a trial by jury.


Dated: May 21, 2019                    Respectfully submitted,


                                       /s/ Joe Kendall
                                       JOE KENDALL
                                       Texas Bar No. 11260700
                                       **KENDALL LAW GROUP, PLLC**
                                       3811 Turtle Creek Blvd., Suite 1450
                                       Dallas, Texas  75219
                                       214-744-3000 / 214-744-3015 (Facsimile)
                                       jkendall@kendalllawgroup.com

                                       **BERGER & MONTAGUE, P.C.**
                                       HANS W. LODGE, MN Bar No. 397012
                                       43 SE Main Street, Suite 505
                                       Minneapolis, MN 55414
                                       Telephone: (612) 607-7794
                                       Fax: (612) 584-4470
                                       hlodge@bm.net

                                       *Attorneys for Plaintiff*